BROTHERHOOD INVESTMENT COMPANY *v.* M. T. MCARTHUR *et al.*

(No. 6741)

Submitted March 10, 1931. Decided March 24, 1931.

*Herbert L. Carney* and *Henry S. Cato,* for appellant.
*George D. Moore,* for appellee.

HATCHER, JUDGE:

M. T. McArthur, defendant below, was the owner of a tract of coal land in Boone County, adjacent to land operated by Coal River Collieries, which the latter desired to lease. There was a vendor's lien on the land for $16,000 and J. T. Dunigan, manager of the Collieries, arranged with the Brotherhood Investment Company, plaintiff below, to loan this sum to McArthur for the purpose of discharging that lien, which was done. McArthur then executed a mortgage on his land to secure the loan, and leased the tract to the Collieries. After repaying $4,000 of the loan, McArthur defaulted, and this suit was brought to foreclose the mortgage. From a decree in favor of the Investment Company, McArthur appeals.

The Collieries became insolvent, owing McArthur approximately $12,000 in unpaid royalties. McArthur's brief contends that he should be credited with this unpaid royalty by the Investment Company, on the following grounds:

> "First. That J. T. Dunigan was the duly authorized agent of the Brotherhood Investment Company to make for that company, and did make for it, an agreement with McArthur to look to the Coal River Collieries directly for repayment of the loan to McArthur to the extent of the royalties arising to McArthur under the lease to the Coal River Collieries.
> Second. That even though the Brotherhood Investment Company did not make such an agreement, it was estopped by its conduct in the premises from denying the agreement."

In support of the first proposition, the brief relies on evidence showing that most of the officers of the Collieries were officials of the Brotherhood of Locomotive Engineers; that the Brotherhood organized and owned the Investment Com-

pany; that the latter financed the Collieries; that the acquisition of the McArthur tract was greatly to the direct advantage of the Collieries, and to the indirect advantage of the Investment Company by adding to its security as creditor of the Collieries; that McArthur understood from Dunigan that the latter represented the Investment Company; that Dunigan agreed with AcArthur that the loan of the Investment Company should be repaid by the royalties from the lease. Testimony of Dunigan is relied on as follows: "I handled the transaction for the Brotherhood Investment Company, as far as any details were concerned between Mr. McArthur and the Investment Company. * * * Why, I presume that I was a representative of the Brotherhood Investment Company in the negotiation of the transfer of the papers on any details in connection with this loan."

Opposed to the foregoing evidence is the uncontradicted testimony (a) of the officials of the Brotherhood that it had no direct financial interest in the Collieries; and (b) of the officers of the Investment Company that Dunigan was not its agent and had absolutely no authority to bind it in any way. The evidence does show that there were no conferences between McArthur and officers of the Investment Company, and that it was solely because of the representations of Dunigan to the Investment Company that the loan was made to McArthur. But because Dunigan could induce the Investment Company to make the loan, that fact would not impliedly clothe him with authority from the lender to make an agreement with McArthur as to manner of repayment. In accepting Dunigan's word or his attitude that he was representing the Investment Company, McArthur acted at his peril, because an assumption of authority is not alone sufficient to prove agency. 1 Am. and Eng. Ency. Law, (2nd Ed.), 969. On August 18, 1926, Dunigan wrote to McArthur that his attention had been called by the Investment Company to the balance due on the loan, and requested McArthur to instruct (in writing) the Collieries to pay to the Investment Company any royalty then or thereafter to become due on the lease. McArthur replied on August 20, 1926, that such an instruction would be entirely agreeable,

and that as soon as he could determine the amount due as royalty, he would direct the Collieries to pay it to the Investment Company. No mention was made in the letters to a prior verbal understanding that the royalties should be credited on the loan. This correspondence is inconsistent with McArthur's claim of such an understanding.

In support of the second ground, McArthur relies on (1) a letter written by J. R. Simmonds, his attorney, to the Investment Company on January 21, 1927, enclosing a copy of a letter from Simmonds to Dunigan dated January 20, 1927, in which was demanded a written confirmation of the alleged verbal agreement (between McArthur and Dunigan) that the royalties should "be offset as a credit on or to liquidate the note" of McArthur; and (2) the subsequent conduct of the Investment Company. On February 7, 1927, the Investment Company wrote to Simmonds that it had taken up his letter with Dunigan and was "advised that he has communicated with you in respect to the same." Simmonds had a conference with Dunigan in March, 1927, at which he says Dunigan re-affirmed the oral agreement and his authority to make it. Dunigan denies any such representations to Simmonds, and the holding of the lower court precludes our acceptance of Simmonds' statements. In July, 1927, a receiver was appointed for the Collieries by the federal court and later the Collieries was declared a bankrupt, owing the Investment Company $1,532,318.79 as of November 30, 1926, and $123,214.77 as of April 25, 1927, both of which sums were unsecured. On August 3, 1927, the Investment Company wrote McArthur requesting payment of the balance ($12,000.00) due on the loan. Simmonds replied on August 27th setting up again the alleged verbal agreement with Dunigan. The Investment Company answered on August 30th, that it had "nothing to do" with any agreement between McArthur and the Collieries. The brief contends that after January 21, 1927, the Investment Company, with full notice of McArthur's reliance on the alleged agreement as to the royalty, failed to repudiate the agreement until the Collieries became hopelessly insolvent, and McArthur was deprived of a remedy against that corporation; that the duty

devolved upon the Investment Company, "if it denied the existence of this agreement, to speak as clearly in denial of it as McArthur's attorney had spoken in asserting his claim;" and that the silence of the Investment Company, under the circumstances, worked "an estoppel as effectually as an express representation acquiescing in McArthur's claim could have done."

This contention overlooks entirely the testimony of Dunigan as to the conference with Simmonds in March, 1927. Dunigan denied having represented that he had authority to say for the Investment Company that the royalties owed by the Collieries would be credited on the McArthur note. Dunigan further testified that what he told Simmonds was that he (Dunigan) would *use his influence* with the Investment Company to secure such a credit. Under Dunigan's testimony (which was accepted by the trial chancellor) McArthur could not have been resting from January to August, 1927, on the assumption that the Investment Company acceded to his alleged oral agreement with Dunigan. The contention also overlooks the failure of McArthur to prove that during this period he could have prosecuted any remedy against the Collieries whereby his claim would have been preferred. An estoppel "is not to be taken by argument or inference." *Campbell* v. *Lynch*, 88 W. Va. 209, 217. If assumption were permissible, it would not favor McArthur. The greater part due the Investment Company by the Collieries had been advanced before January of 1927, and the fact that the Collieries was allowing the interest to accumulate unpaid and was borrowing more money in 1927 (April) would indicate that it was in no better condition in January than in July of 1927. It is elementary that McArthur assumed the burden in asserting estoppel, to show that he was misled by the conduct of the Investment Company and that he was in fact prejudiced thereby. 21 C. J., subject, Estoppel, sec. 267; 10 R. C. L., subject, Estoppel, sec. 25. The proof thereof "must be clear, precise and unequivocal." 10 R. C. L., *supra*, sec. 150. He has failed to carry this burden.

The decree of the circuit court is accordingly affirmed.

*Affirmed.*